UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA, :
    Plaintiff :
 :
v. : File No. 1:09-cr-00043-jgm-1
 :
EDWARD CAMPBELL, :
    Defendant :
 :

RULING ON DEFENDANT'S MOTION TO COMPEL DISCLOSURE
OF IDENTITY OF CONFIDENTIAL INFORMANT AND FOR
PRODUCTION OF DOCUMENTS AND MATERIALS
(Paper 15)

In a pretrial motion, defendant Edward Campbell asks the Court to compel disclosure of a confidential informant's identity, and to release various documents relating to the confidential informant. The government opposes the motion. For the reasons below, the Court denies the motion without a hearing.

I. Background

Campbell's indictment charges him with three counts of knowingly and intentionally distributing Oxycontin, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). The charges stem from three transactions, two of which involved a confidential informant ("CI").

The CI at issue began working with the Burlington Police Department in December 2008, after she was arrested for illegally possessing Suboxone pills and decided to cooperate. Using the CI, police arranged two controlled drug buys from an individual

known as "Big Ed" who was believed to supply Oxycontin from his residence at the Golden Place apartments in Burlington.

On January 29, 2009, the CI called Big Ed — identified as Edward Campbell — to indicate she wanted to purchase Oxycontin pills. The police provided her with money, searched her to confirm she had no drugs and only the designated "buy" money on her person, and attached an audio transmitter to record her conversations. Police stationed themselves in and around Campbell's apartment complex, and watched the CI enter the building at 6:38 p.m that day. Two minutes later, the CI emerged with two Oxycontin 80 milligram pills and no money. There is an audio recording of the time the CI was inside the building, but the parties dispute whether it is intelligible. At very least, it appears Campbell's voice can be heard and the CI can be heard explaining the desired quantity of pills and saying "thank you."

On March 19, 2009, the CI contacted Campbell again and went to his apartment for another controlled buy. The police searched the CI beforehand, gave her money and an audio transmitter, and placed surveillance around the building. Officers observed the CI entering the apartment building, and leaving about 10 minutes later. On leaving the building, the CI had three Oxycontin 80 milligram pills and no money. Both the defense and government acknowledge the audio recording from this transaction is

unintelligible, although Campbell's voice apparently can be heard.

The third sale is alleged to have occurred on March 27, 2009, when police officers observed Campbell meeting with a man in a Rite Aid parking lot. After the two men parted, police searched the second man and found fifteen Oxycontin 80 milligram pills wrapped in a paper towel. This transaction did not involve the CI, so further details are unnecessary for the purpose of resolving the instant motion.

Campbell was arrested and his apartment was searched on the evening of March 27, 2009. Police found crack cocaine, over $17,000 in cash, but no Oxycontin in the apartment. Various items linked Campbell to Oxycontin dealing, however, including $600 cash identified as "buy" money from a recent police-controlled purchase of Oxycontin (different from the two controlled buys described above), and a roll of distinctively-marked paper towels matching the paper towel in which the Oxycontin pills from the third sale were wrapped.

After the arrest, Campbell was charged under state law and released pending arraignment. A few days later, however, he fled the jurisdiction. A federal warrant was issued for Campbell, and the U.S. Marshals began a fugitive hunt for him. A federal indictment issued in April 2009, charging him with three counts of violating 21 U.S.C. § 841(a)(1). About six months after he

fled Vermont, Campbell was located and arrested in Pennsylvania, and transported back to Vermont in custody. On November 9, 2009, he was arraigned in this Court and detained pending trial.

This is Campbell's third federal drug prosecution in Vermont. In 1993, he was sentenced to 57 months in prison and five years of supervised release. United States v. Campbell, No. 2:93-cr-9-1 (D. Vt.). Shortly after being released from prison, Campbell was arrested again on drug charges, and in 1999 was sentenced to 122 months imprisonment and eight years of supervised release (as well as 4 months of imprisonment concurrently, for violating his previous term of supervised release). United States v. Campbell, No. 1:98-cr-14-1 (D. Vt. Apr. 26, 1999). When arrested by Burlington police in March 2009, Campbell was still serving a term of supervised release from his second federal conviction.

## II. Discussion

Campbell moves to compel disclosure of the identity of CI, the confidential informant used for the drug transactions on which Counts 1 and 2 of his indictment are based. The government opposes Campbell's motion.

### A. Applicable Law

If the government intends to use a confidential informant as a trial witness, the informant's identity is usually disclosed, and any material impeaching information must be turned over to

the defense prior to trial.  See Giglio v. United States, 405 U.S. 150 (1972).  Even if the government does not plan to call the CI as a witness, however, a criminal defendant can sometimes compel the government to reveal the CI's identity.  In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme Court discussed the so-called "informer's privilege" and its limits.  The Court stated:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. . . . [However, a] limitation on the applicability of the privilege arises from the fundamental requirements of fairness.  Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

Id. at 59-61.  The Supreme Court noted that "no fixed rule" exists to determine when the informer's privilege should give way to the defendant's interests; rather, courts should simply "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense."  Id. at 62.  In particular, courts should look to "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other factors."  Id.

In Roviaro, the defendant's charges were based on a drug transaction. The CI was the only other participant in the transaction, making him "the only witness in a position to amplify or contradict" certain factual issues, were the defendant to choose not to testify. Id. at 64. Moreover, when the CI saw the defendant after his arrest, the CI said he did not recognize him; this appeared to raise the Supreme Court's suspicions. See id. at 58 & n.4. The Court noted the CI's testimony "might have disclosed an entrapment," or "might have thrown doubt on [the defendant's] identity." Id. at 64. Under these circumstances, the Court concluded the informant's identity should have been released so the defense could contact and interview him, and potentially call him as a witness. Id. at 65.

Subsequent cases have refined the Roviaro approach somewhat, but the overall inquiry remains flexible. As a general matter, "[t]he defendant bears the burden of showing the need for a disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997). In particular, the defendant must show (1) the CI was a witness or participant in the charged crime, and (2) there is a way the CI could testify that would materially help the defense, and (3) it is plausible the CI would actually testify in that way, given the circumstances of the case.

6

See United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). If disclosing the CI's identity would endanger him or her, this weighs against disclosure. See, e.g., United States v. Jimenez, 824 F. Supp. 351, 365 (S.D.N.Y. 1993).

In cases where the issue is close — especially those involving danger to the CI — courts can hold an in camera hearing with the CI, to determine if the CI does in fact have helpful testimony for the defense. See Fields, 113 F.3d at 324; Saa, 859 F.2d at 1074-75. In camera hearings are not necessary, however, to resolve every motion to compel disclosure of the identity of a CI.

B.  Analysis

Here, the CI was a witness to and participant in two of the transactions charged in Campbell's indictment. Accordingly Campbell has met the first requirement for disclosing the CI's identity. Moreover, the CI was the only witness to these transactions other than Campbell, which makes her testimony potentially important: she is "[t]he only person, other than [Campbell] himself, who could controvert, explain or amplify" on what actually happened inside the Golden Place apartments on January 29 and March 19, 2009. Roviaro, 353 U.S. at 64. See also DiBlasio v. Keane, 932 F.2d 1038, 1043 (2d Cir. 1991) (noting the importance of CI testimony when the CI is "the only witness who could corroborate" certain key facts).

7

Turning to the second factor, Campbell's motion raises several ways the CI could potentially testify that he believes would help him. In particular, Campbell points to:

> whether there was any hand-to-hand transaction in which drugs were delivered to the informant from Mr. Campbell; whether consideration was exchanged and provided to Mr. Campbell as part of any such transaction; whether there were additional conversations or other interactions between Mr. Campbell and the informant relating to the alleged transactions that took place after the exchange; and . . . the amount and nature of the alleged drugs involved in the transaction.

Paper 15 at 6-7. Several of these subjects would not be particularly helpful to Campbell. Drugs need not pass from hand to hand, in order to constitute an illegal sale, and additional interactions after the exchange are generally irrelevant. Whether consideration was exchanged is important, however, as is the amount and nature of drugs involved in the transaction, so Campbell arguably meets the second requirement for disclosure.

Campbell fails to meet the third requirement, though, as he provides no reason to believe the CI would testify in his favor on these subjects. The Second Circuit has made clear that "[s]peculation . . . is not sufficient to meet the defendant's burden." Fields, 113 F.3d at 324; accord DiBlasio, 932 F.2d at 1043 (requiring defendant to do "more than posit the possibility" of the CI testifying in his favor, such as actually pointing to evidence or information suggesting the CI might testify in that way); Saa, 859 F.2d at 1073 (same). For example, in Saa, the

8

defendant pointed to two witnesses who disagreed on whether the defendant was present during the crime; given this existing disagreement, the Second Circuit concluded it was possible the CI could testify in the defendant's favor. Saa, 859 F.2d at 1073-74. In DiBlasio, the defendant himself maintained an entrapment defense and testified about how the CI induced him to commit the crime; in these circumstances it was more than more speculation that the CI would have something to say about entrapment that could help the defense. DiBlasio, 932 F.2d at 1043. Similarly, in Roviaro, the CI himself had denied knowing the defendant, which made it more plausible that the CI would testify in a way helpful to the defendant. Roviaro, 353 U.S. at 64-65. Here, Campbell has simply raised possible topics for testimony, without providing any reason to believe the CI would testify in a way that is materially helpful to him. As for whether consideration was exchanged, the CI was searched before and after each transaction, and was found to be carrying money and no drugs beforehand, and drugs and no money afterward. In the face of this evidence, Campbell offers no reason at all why the CI would testify that consideration was in fact not exchanged. In terms of the amount and nature of drugs involved in the transaction, two Oxycontin 80 milligram pills were found on the CI after the January 29, 2009 transaction, when she possessed none beforehand, and three pills were similarly found on her person after the

March 19, 2009 transaction.  Campbell provides no reason to believe the CI would testify to any different amount or type of drugs being exchanged.  Thus, Campbell fails to meet the third requirement for disclosure of the CI's identity.

Finally, it is worth noting the CI may be in danger if her identity is revealed.  The government cites inmate conversations indicating an intent by Campbell to harm the CI, as well as Campbell's ability to arrange assaults through his connections outside prison.  <u>See</u> Paper 18 at 5.  This also weighs against disclosing the CI's identity.  <u>See, e.g.</u>, <u>United States v. Jimenez</u>, 824 F. Supp. 351, 365 (S.D.N.Y. 1993) ("Especially in narcotics cases, where the dangers of witness intimidation, subornation of perjury or actual injury to witnesses are great, the defendant's request for [disclosure] should not be granted absent a particularized showing of need." (internal quotation omitted)).

III. <u>Conclusion</u>

Because Campbell provides no reason to believe the CI would provide materially helpful testimony, and because revealing the CI's identity may place her in danger, the Court finds Campbell has not met the standard for disclosure.  The motion is accordingly DENIED.

Dated at Brattleboro, in the District of Vermont, this 21st day of June, 2010.

                                                /s/ J. Garvan Murtha
                                                Honorable J. Garvan Murtha
                                                Senior United States District Judge